## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN JONES,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SELECT INTERIOR CONCEPTS, INC., L.W. VARNER, JR., S. TRACY COSTER, DONALD MCALEENAN, BRYANT RILEY, ROBERT SCOTT VANSANT, and BRETT WYARD,<br><br>　　　　　　Defendants, | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff John Jones ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.　Plaintiff brings this action against Select Interior Concepts, Inc. ("SIC" or the "Company") and SIC's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Sun Capital Partners, Inc. through its affiliate Astro Stone Intermediate Holding, LLC and its wholly-owned subsidiary Astro Stone Merger Sub, Inc. (collectively "Sun Capital").

2.　Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on September 15, 2021. The Proxy recommends that SIC stockholders vote in favor of a proposed transaction (the "Proposed Transaction")

1

whereby SIC is acquired by Sun Capital. The Proposed Transaction was first disclosed on August 9, 2021, when SIC and Sun Capital announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Sun Capital will acquire all of the outstanding shares of common stock of SIC for $14.50 per share (the "Merger Consideration"). The deal is valued at approximately $411 million and is expected to close in the fourth quarter of 2021.

3.     The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by SIC management, as well as the financial analyses conducted by RBC Capital Markets, LLC ("RBC") and Truist Securities, Inc. ("Truist"), SIC's financial advisors.

4.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disseminated to SIC's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of SIC.

6.     Defendant SIC is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 400 Galleria Parkway, Suite 1760, Atlanta, Georgia, 30339. SIC common stock trades on NASDAQ under the ticker symbol "SIC."

7.  Defendant L.W. Varner, Jr. has been CEO and a director of the Company since 2020.

8.  Defendant S. Tracy Coster has been a director of the Company since 2018.

9.  Defendant Donald McAleenan has been a director of the Company since 2017.

10. Defendant Bryant Riley has been a director of the Company since 2019.

11. Defendant Robert Scott Vansant has been a director of the Company since 2017.

12. Defendant Brett Wyard has been a director of the Company since 2017.

13. Defendants Varner, Coster, McAleenan, Riley, Vansant, and Wyard are collectively referred to herein as the "Board."

14. Nonparty Sun Capital Partners, Inc. is a private equity firm with offices in Boca Raton, Los Angeles, and New York.

15. Nonparty Astro Stone Intermediate Holding, LLC is a Delaware limited liability company and is an affiliate of Sun Capital Partners, Inc.

16. Nonparty Astro Stone Merger Sub, Inc. is a Delaware corporation and is a wholly owned subsidiary of Astro Stone Intermediate Holding, LLC.

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

18. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under

traditional notions of fair play and substantial justice.

19. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

20. SIC distributes and installs residential building products. The Company works with homebuilders and homebuyers to select flooring, countertops and related items for newly constructed homes. While revenues fell in 2020, they were still up almost 57% from 2017, and the Company had a backlog of $548.7 million as of December 31, 2020.

21. On August 8, 2021, the Company entered into the Merger Agreement with Sun Capital.

22. According to the press release issued on August 9, 2021 announcing the Proposed Transaction:

> **AN AFFILIATE OF SUN CAPITAL PARTNERS, INC. TO ACQUIRE SELECT INTERIOR CONCEPTS FOR $411 MILLION**
>
> - **Shareholders to receive $14.50 per share in an all-cash transaction providing attractive valuation**
> - **Select Interior Concepts to become privately owned company as part of Sun Capital's portfolio**
> - **Q2 2021 earnings call previously scheduled for August 9, 2021 cancelled**
>
> **Atlanta, Georgia – August 9, 2021** – <u>Select Interior Concepts, Inc.</u> (NASDAQ: SIC), a premier distributor of interior building products, today announced that it has entered into a definitive agreement under which an affiliate of Sun Capital Partners, Inc. ("Sun Capital") will acquire Select Interior Concepts ("SIC") for approximately $411 million in an all-cash transaction (the "Merger Transaction").
>
> Under the terms of the agreement, each share of SIC common stock issued and outstanding immediately prior to the closing of the transaction will be entitled to receive $14.50 per share in cash, representing a 32% premium over SIC's closing

price and a 42% premium over SIC's 30-day volume-weighted average price of $10.20 on August 6, 2021. Subject to shareholder approval and other customary closing conditions, including the receipt of required regulatory approvals, the transaction is expected to close early in the fourth quarter of 2021. Upon the completion of the transaction, SIC will become a privately held company and shares of SIC common stock will no longer be listed on any public markets.

Brett G. Wyard, Chairman of SIC, commented, "On June 30, 2021, when we announced the closing of the sale of our Residential Design Services segment, we noted that the Board was actively evaluating a full range of strategic, operational and financial alternatives to ensure that the Company was on the best path to delivering shareholder value. After thorough and thoughtful deliberations in consultation with our financial advisors, we are pleased to enter into a definitive sale agreement with an affiliate of Sun Capital. In making this decision, the Board considered the current state of the business and its outlook and opportunities. We believe this path is in the best interests of our shareholders, providing them with immediate and substantial value for their investment."

Bill Varner, Chief Executive Officer added, "This transaction will deliver significant cash value for SIC's shareholders as promised when I joined SIC. Additionally, it offers exciting new opportunities for customers, partners and employees of our Architectural Surfaces Group ('ASG') segment. We are very grateful to the entire team that contributed to SIC's and ASG's success over the years. Sun Capital is the ideal partner to advance its long-term strategy and the transaction is a testament to the dedication and achievements of our team members."

"We have long been an active investor in the building materials sector, and have been impressed by SIC's track record, ability to deliver for customers and overall industry vision," said Jeremy Stone, Managing Director at Sun Capital. "We are excited to support SIC's strong management team in the next stage of growth, capitalize on new opportunities and drive success."

B. **The Materially Incomplete and Misleading Proxy**

23. On September 15, 2021, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

24. The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of RBC's fairness opinion, RBC reviewed "certain financial projections and other estimates and data relating to the Company prepared by the Company's management." Truist reviewed "certain financial projections and other estimates and data relating to the Company prepared by the Company's management" in connection with the rendering of its fairness opinion. Accordingly, the Proxy should have, but failed to, provide certain information in the projections that SIC's management provided to the Board and RBC and Truist.

25. Notably, Defendants failed to disclose the standalone unlevered free cash flows for 2021 through 2025, as well as the line items underlying the unlevered free cash flows, as used in RBC's financial analyses. The Proxy also fails to disclose the unlevered free cash flows for 2021 to 2025, as well as the line items underlying the unlevered free cash flows, as used in Truist's financial analyses. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning RBC's Financial Analyses*

26. With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the terminal values and the terminal year unlevered free cash flow utilized in the analysis. The Proxy also fails to disclose the inputs and assumptions used to derive the discount rate range of 13.0% to 15.0% and the perpetuity growth rates of 2.0% to 3.0%.

27. With respect to the *Selected Public Companies Analysis,* the Proxy fails to disclose the multiples for 2021E Adjusted EBITDA and 2022E Adjusted EBITDA for each selected company. Similarly, with respect to the *Selected Precedent Transactions Analysis*, the Proxy fails

to disclose the multiples for LTM Adjusted EBITDA for each selected transaction. The Proxy also fails to disclose the values of the transactions selected.

### *Materially Incomplete and Misleading Disclosures Concerning Truist's Financial Analyses*

28. With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the inputs and assumptions used to derive the discount rate range of 10.7% to 11.6% and the perpetuity growth rates ranging from 1.0% to 3.0%. The Proxy also fails to disclose the terminal values of the Company. Furthermore, the Proxy fails to disclose the Company's weighted average cost of capital.

29. With respect to the *Selected Public Companies Analysis,* the Proxy fails to the multiples for LTM Adjusted EBITDA and 2021E Adjusted EBITDA for each company selected. Similarly, with respect to the *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the multiples for LTM Adjusted EBITDA for each transaction selected. The Proxy also fails to disclose the values of the transactions selected.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

30. The Proxy also fails to disclose material information concerning the sales process. For example, the Proxy fails to state whether the confidentiality agreements SIC entered into during the sales process contain standstill provisions that are still in effect, which prevent those parties from making a topping bid for the Company. The Proxy also fails to state whether any standstill provisions have been waived.

31. The Proxy further fails to disclose important details about potential conflicts of interest on the part of RBC and Truist. RBC acted as joint lead arranger and lender for a portfolio company of Sun Capital, and is currently providing services to Sun Capital or its affiliates, yet the Proxy states that RBC has received less than $100,000 for services provided to Sun Capital and/or

its affiliates in the past two years. Truist also provided services to SIC in the two years prior to rendering its fairness opinion, but the Proxy fails to disclose whether Truist provided any services to Sun Capital and/or its affiliates. If any such services were rendered, the Proxy does not disclose the compensation that Truist received.

32. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

33. In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

34. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

35. Further, the Proxy indicates that on August 8, 2021, RBC and Truist reviewed with the Board their financial analyses of the Merger Consideration and delivered to the Board their oral opinions, which were confirmed by delivery of written opinions of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to SIC stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material

information concerning RBC and Truist's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

36. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Defendants have filed the Proxy with the SEC with the intention of soliciting SIC stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

39. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of SIC, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-

9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of SIC shares and the financial analyses performed by RBC and Truist in support of their fairness opinions; and (iii) the sales process.

42. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that RBC and Truist reviewed and discussed their financial analyses with the Board on August 8, 2021, and further states that the Board considered RBC's and Truist's financial analyses and fairness opinions in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

43. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of SIC within the meaning

of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SIC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

48. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: October 1, 2021 **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*